STATE OF NORTH CAROLINA ON RELATION OF THE UTILITIES COMMIS-
SION v. ATLANTIC COAST LINE RAILROAD CO.

(Filed 29 October, 1952.)

Carriers § 1½ : Utilities Commission § 5—Under facts of this case, motion
to remand to Utilities Commission for additional evidence should have
been allowed.

Where, on appeal to the Superior Court from order of the Utilities Com-
mission denying a railroad company's petition to discontinue an agency at
a particular station, it appears that the finding of the commission that
there had been a vast improvement in the receipts of the agency was based
upon the revenue for only three months of the year during which the hear-
ing was had, and the carrier moves to remand upon affidavit showing that
the receipts of the agency were seasonal and that for the entire year in
question its losses were in excess of those for the previous years, *held* the
carrier's motion to remand should be allowed in order that the Utilities
Commission may have opportunity to consider the proposed evidence and
take such action thereon as may be just and proper.

APPEAL by defendant from *Hatch, Special Judge,* March Term, 1952,
of WAYNE.    Remanded.

This was a proceeding instituted before the North Carolina Utilities
Commission by the application of the Atlantic Coast Line Railroad Co.
for permission to discontinue agency service at Pikeville, North Carolina.

The application was based on the allegation that the volume of railroad
business and the revenues received therefrom at Pikeville were insufficient
to justify the continued employment of an agent at that station at a
substantial loss to the Railroad Company, and that non-agency service
would be adequate to serve the needs of the public and those having deal-
ings with the Railroad Company at that station.

The application was filed December, 1949, and protests against discon-
tinuance of agency service were lodged with the Commission on behalf of
the governing body and citizens of Pikeville.    The first hearing was had
3 March, 1950.    But in order to develop the facts more fully and to ascer-
tain the result of operations in 1950 the matter was held open, and an-
other hearing was had 3 May, 1951, at which time the Railroad Company
presented figures from its records tending to show the operations for the
years 1949 and 1950 at this station.

In 1949 the total revenue amounted to $11,592.    The cost of transpor-
tation attributable to Pikeville, based on the proportionate operating
ratio for the entire Atlantic Coast Line system at 79.77%, was $9,247,
showing a net revenue of $2,345.    But the expense of agency service was
$3,334, resulting in a loss for the year 1949 of $989, or a monthly average
of $82.42.

In 1950 the total revenue was $9,395, and the cost of transportation at the ratio of 74.86% left net revenue $2,362. As the agency expense was $3,359, this showed a net loss of $997, or a monthly average of $83.08.

It also appeared in evidence at the hearing in May, 1951, that for the months of January, February and March, 1951, the figures would show total revenue $4,111, cost of transportation $3,279, and agency expense $904. This would show a net loss of only $72. The defendant, however, contended if the hearing was to be determined on the basis of the year 1951, those three months would not be a fair average for the entire year.

There was evidence offered by the protestants tending to show that Pikeville was an incorporated town of 500 inhabitants, with 22 business houses, including a bank and several wholesale stores, two elementary schools and two high schools, and paved streets; that it was served by numerous motor and bus lines operating on a through highway. There was also evidence that the town was situated in a prosperous agricultural section, on the line of the Atlantic Coast Line Railroad from Rocky Mount to Wilmington, 3.2 miles south of Fremont and 7.7 miles north of Goldsboro.

The Utilities Commission found the following facts:

"1. The agency at Pikeville is being operated at a financial loss to the applicant, insofar as the receipts at said station fall short of sufficient revenues to pay the actual expenses incurred in keeping said agency open.

"2. The loss sustained during the year 1950 amounted to $997.44, or a monthly average of $83.12.

"3. That the loss of the applicant for the year 1950 exceeded its loss for the period December, 1948, to November, 1949, inclusive, by approximately $13.44, or $1.12 per month.

"4. That for the first three months of 1951, January through March, the loss sustained by the applicant amounted to $72.78, or a monthly average of $24.46, and that these figures raised to an annual basis would mean a loss to the applicant of approximately $291.12 for the year 1951.

"5. That the financial results for the period which the Commission required the applicant to report were constant with the period upon which the application was made, and that the results of the first three months of 1951 indicate a vast improvement at the agency.

"6. That the town of Pikeville is growing and expanding industrially, and as a business community.

"7. That the agency at Pikeville is rendering a valuable service to the citizenship of the community, and is a distinct public convenience.

"The question to be determined is whether or not the need for this agency, and the convenience it amounts to for the public who use it, is sufficient to warrant the Commission to require that said agency be continued despite the financial loss the applicant may sustain by continuing

the same. It is the opinion of the Hearing Commissioners that said agency be continued." One commissioner dissented.

Upon these findings the Commission entered order denying the railroad's application to discontinue agency service at Pikeville, overruled defendant's exceptions to the order, and denied petition to rehear.

On appeal to the Superior Court the order of the Utilities Commission was affirmed.

The defendant Railroad Company in its exceptions to the order of the Commission and in its petition to the Commission to rehear noted exception to the incorporation in the Commission's findings as the basis for its order, the figures for the first 3 months of 1951 as misleading and insufficient to form the basis for the finding therefrom that these results indicated a "vast improvement at the agency," and at the hearing before Judge Hatch in March, 1952, the defendant offered an affidavit showing that for the entire year 1951 the loss to the Railroad Company at Pikeville instead of being less than the preceding years was in excess, amounting to $1,254.85, or a monthly average of $104.57. Defendant moved that the proceeding be remanded to the Commission for further consideration of the case in the light of these corrected figures. This motion was denied. In the judgment affirming the order of the Commission the court did not rule on the specific exceptions to the Commission's order, but recites that after consideration of the record the order was in all respects affirmed.

*Attorney-General McMullan and Assistant Attorney-General Paylor for State of North Carolina ex rel. North Carolina Utilities Commission, plaintiff, appellee.*

*J. Russell Kirby for Town of Pikeville, appellee.*

*Murray Allen for Atlantic Coast Line Railroad Company, defendant, appellant.*

DEVIN, C. J. It is apparent that the order of the Utilities Commission, which was affirmed by the court below, was based in part upon these findings:

"4. That for the first three months of 1951, January through March, the loss sustained by the applicant amounted to $72.78, or a monthly average of $24.46, and that these figures raised to an annual basis would mean a loss to the applicant of approximately $291.12 for the year 1951.

"5. That the financial result for the period which the Commission required applicant to report were constant with the period upon which the application was made, and that the results of the first three months of 1951 indicate a vast improvement at the agency."

At the time of the hearing in May, 1951, and the entering of the order appealed from, the result for that year was not known. The defendant Railroad Company now offers evidence tending to show that the railroad revenues at Pikeville for the first three months of 1951 were seasonal and that in fact the loss for the year 1951 instead of being $291, as estimated by the Commission, was $1,254.85.

In justice to the defendant we think the Commission should be permitted to consider the result for the entire year 1951 on evidence properly presented, and to determine what effect, if any, the facts in relation thereto may have on the order continuing agency service at Pikeville. As the defendant had no opportunity to offer evidence of the results for the year 1951 the inclusion in the findings, as material to the decision, of a partial, and, as defendant contends a misleading basis for estimating the loss for the year, would seem to entitle the defendant to have an opportunity to have included in the record the result for the entire year 1951 for the consideration of the Commission as it may bear on the question of the continuance of agency service at Pikeville.

The proceeding, therefore, is remanded to the Superior Court to the end that the Utilities Commission may have opportunity to consider the additional evidence proposed and take such action thereon as may be just and proper.

Remanded.